Case number 17, 1918, United States of America versus Sardar Ashrafkhan. Arguments not to exceed 15 minutes per side. Mr. Wicker, Court of the Appellants. Good morning, gentlemen, and welcome to the Court of Appeals for the Sixth Circuit. I do want to assure you that the panel is prepared for your cases this morning. We have read your briefs. Because we are prepared, we would prefer it if you'd please spend your time arguing the most critical issues in your case. We will assume that issues that are not argued today that you rely upon the arguments contained in your brief. I've been told by the clerks, by the clerk, that Mr. Wicker, that you've reserved two minutes to rebuttal. Is that correct? I'd like three minutes, Your Honor, but I'd be happy to... No, three minutes. You've got three minutes, and you may proceed. Thank you, Your Honor, and may it please the Court. My name is Kent Wicker. I represent the Defendant Appellant Sardar Ashrafkhan. I will begin by apologizing for the production values from my dining room, but I do appreciate the Court's willingness to hear counsel in this unusual time. What we do here is important, and I thank you for that. I'd like to spend the bulk of my time talking about the first argument in our brief, which deals with reasonable doubt. Dr. Khan, who I will refer to in the same way that he was referred to at trial, Dr. Khan was convicted and sentenced to 23 years in prison based on a reasonable doubt instruction that misinformed the jury about the concept of reasonable doubt and diminished the government's burden in proving its case. The trial judge refused to give the pattern instruction, which tells the jury the very important concept that proof beyond a reasonable doubt means proof which is so convincing that you would not hesitate to act on it in making the most important decisions in your own lives. In fact, there was nothing in the instruction that told the jury that there was a different standard for criminal cases than for civil cases. Nothing in the instruction that told the jury that had to be more convinced than by a preponderance of the evidence. Mr. Wicker, the instruction was basically the Michigan standard criminal jury instruction with some modifications given by Judge Cleland. It talked about reasonable doubt, it didn't talk about preponderance of the evidence. Haven't we rejected your argument before? I mean, don't we have unpublished opinions that have said that this basic instruction is not reversible error? The courts confronted this issue with this particular district judge three times, your honor, in three other opinions. The most recent one was the United States v. Camargo Antonio from 2013, in which the court criticized the instruction and the judge's refusal to give the pattern instruction. It made the point by saying that the district's, and I'll quote, the district court's jury instruction here does not address the near certitude that the reasonable doubt standard anticipates. The court went into some detail about what was wrong with the instruction, about what it didn't tell the jury, and how it wasn't helpful to the jury's understanding of reasonable doubt. Now, the court ultimately did not reverse the conviction. It affirmed the conviction because it was looking at the plain error standard and it noted that the error had not been preserved on appeal. It's also important to note that this was a one-day trial and the proof seemed to be quite overwhelming in that case involving illegal re-entry after deportation. So the court looked at the case under the plain error standard, found that under that standard it was not reversible error. Do the other unpublished opinions that have affirmed this jury instruction, did they also evaluate it under plain error? No, your honor. Both of the other cases from 2012 and 2011 evaluated the case under the usual standard for preserved error in jury instructions, and they reached different decisions. But they are unpublished cases, they're not binding on this court, and the court can look at this case in the same way that the Camargo court did to determine was this error, was this important, was this a problem for the jury to reach the right decision. Okay, do you know a little bit about the history of the instruction and why our Supreme Court has ever told us we have to have it, and I know at least four other circuits do not follow it. Do you know what our history is, why we've adopted it, and sort of where it came from? I don't know the complete answer, your honor. I happen to be on the Pattern Jury Instruction Committee, and it was among the instructions that had already been adopted before I came on the committee. But I know that it is very similar to a number of instructions that are used around the country. That particular phrase about explaining why this is an important matter in your own lives is a commonly used instruction around the country. It's certainly not universal, but the concept is necessary to explain to a jury why this is important and how important it is and how different it is from an ordinary civil case. So your argument is that this is the only possible way that a jury could get this message is through the use of these magic words? Not at all, your honor. There are any of words that could be used. So the argument isn't really that this instruction wasn't given. You're not really that wed to this language, this language that was proposed. Your main point is that the instruction was misleading or confusing as given. My argument is not that it is constitutionally required to give the Sixth Circuit's Pattern Jury Instruction, not at all. It's necessary to inform the jury that reasonable doubt is a concept that the Supreme Court has decided as near certitude of guilt. There are any number of words that can be used to describe that concept. But those words, that concept was not explained here. Well, you've said several different things where you say it didn't explain the difference between civil and criminal. It didn't say that it's not a preponderance. And you've used the words near certitude. Are there any cases that advert to any one of those three things in instructions? I didn't find those. Granted, it's a different form of words. And I understand the theory behind what you're saying. But in instructions, nobody says those things, do they? Well, the words that I quoted are not contained in any jury instruction of which I'm aware. But the concept is the important thing. Are we saying something, some form of words that explains to the jury that the government's burden is higher on a criminal case than it is in a civil case? Are we telling something to the jury that allows them to understand that they have to reach a higher degree of certainty than in a civil case? If we do that, then we've met the requirements But if we don't, then we've not explained to the jury what reasonable doubt means. And it has no guideposts. It has no way to determine how it's supposed to evaluate the evidence and how sure it must be before reaching a verdict. Well, see, I don't understand your argument that you think that the jury thought it was preponderance. I mean, Judge Cleveland has honest, fair doubt growing out of the evidence or lack thereof. I mean, he went on to explain reasonable doubt and said you have to be convinced beyond a reasonable doubt. I mean, where's the confusion here? Well, Your Honor, you could say all those things about a civil case as well. Well, I mean, he's not referring to preponderance. He's referring to reasonable doubt. You think maybe he could have defined it better, but he told them they had to find beyond a reasonable doubt. That's right, Your Honor, but he didn't tell the jury what a reasonable doubt was. He certainly did. He's got a long definition of reasonable doubt. Ultimately, reasonable doubt would be a doubt that is still standing, a doubt that you find reasonable after you've carefully considered, discussed all the facts and circumstances presented in the case. I mean, he goes on and on to explain it. He does it a different way than our Sixth Circuit instruction, but he does define it. And is there anything wrong with the way he defined it? Yes, Your Honor. He doesn't explain that it's different than a civil case and that it poses a higher burden for the court or for the jury than in a civil case. But counsel, this stuff about it's different from a civil case, it might be nice, but that's not in any of them. The thing that I found interesting as a layman, if I put on my layman hat and listen to both of these, the part in Judge Cleland that negatively defines it says, well, if it's merely imaginary, speculative, sympathy, prejudice, or guessing, then that doesn't count. It implies that everything else is reasonable, that once you've thought about it, if it's not one of those bad things, it is probably a good thing. Whereas I must say, I always find the pattern when a little bit confusing as a double negative, you would not hesitate to act. I hear what you're saying about the difference. It might be nice to have something that says that it's more than a preponderance, but everything about it, including the standard one and this one, is it's way above a preponderance. I mean, except for the language in Carmargo, which I found interesting that you didn't raise in your initial brief, I haven't seen people that have criticized alternative versions of this sort. Well, Your Honor, let me try to address that question and Judge Griffin's question before. Reasonable doubt, as it's been explained by the Supreme Court, is more than just a qualitative question. And Judge Cleland's definition explained it as where reasonable doubt comes from. It's a doubt based on reason. It's a doubt based not on speculation. Reasonable doubt is really more than that. Reasonable doubt is a quantitative measure. It's a margin of victory that the government must meet to what the Supreme Court has called a near certitude of guilt. If there are no words in the instruction that explain that the government must win by more than a basket, then the jury has not been fully and completely informed about what the government's burden is. Granted, Carmargo uses near certitude. Does any instruction that's approved anywhere use that? Does Victor use that? No, Your Honor. No, Your Honor. And the instruction says it doesn't mean absolute certainty, but that sure implies that it means pretty certain, doesn't it? There's nothing that implies preponderance. Well, there's nothing that explains the margin one way or the other. It just refers... And does the standard instruction... What in the standard instruction gives you a quantitative statement? Things you would not hesitate to act upon. And I like math myself, and I never found that that was very useful in whether it meant 94 percent or 97 percent or 99 percent, because there's lots of things that I don't hesitate to act upon. I may bet on U of L or U of K. I don't hesitate to act upon it. Is there anything about the math in the standard instruction that you could point to? Well, there's no math in the standard instruction. Certainly, that would be a useful way to describe it, or there are other analogies that those of us in Kentucky would use. But the importance is that the jury has to know that the burden is higher for a criminal case than for a civil case, that the burden for the government to prove each element of its case. And if the government doesn't meet that burden, then it can't prevail. Okay. All right. Mr. Wicker, I see you're out of time. You can use your three minutes rebuttal right now if you want, or you can save it. Your Honor, I would only like to add one point on a different argument. Our discussion here this morning about reasonable doubt was a useful and important one. But I would not like the court to overlook the sentencing issue that we have raised as well, and the judge's belief, and unfounded on any evidence in the record, that Dr. Khan and his co-defendants had caused deaths in the Portsmouth, Ohio region. He raised that issue that was part of his reason for the sentence that he imposed, and asked the court to give that issue some close attention. Okay. All right. You'll have your three minutes rebuttal. Any further questions? Judge Boggs? Judge Riegler? No? All right. Thank you. All right. Mr. Perrette? We can't hear you. Hi. The clerk said they were going to open that for me. Thank you. May it please the court. When you compare the two instructions, the one that Judge Cleland gave and the court's standard instruction, it's really remarkable that they cover all the same concepts in an overlapping matter, except for one sentence each. They both say that the government must prove every element of the crime beyond a reasonable doubt. They both explore the concept that that's not all possible doubt. They both have language that talks about that reasonable doubts are not based on speculation or possibilities. Both of the instructions share that common element. They both use the words reason and common sense. And they both talk about the fact that reasonable doubt can derive from the nature of the evidence, the lack of evidence, or the nature of the evidence. And finally, they end up with, if it's not beyond a reasonable doubt, you have to return a not guilty verdict. And that's why the criticism of the Michigan instruction in the Carmago case I thought was kind of interesting because they said, how terrible it is that you just direct the jury to talk about the nature of the evidence. Well, the pattern instruction says refer to the nature of the evidence. They criticized it because they said it tells you to use your common sense. That's in the pattern instruction too. And they criticize it by saying it's circular, by ending up saying if you don't have if you have a reasonable doubt, you must acquit. And that's in the standard instruction too. So in that unpublished case, I don't think, and then they finally held in the government's favor. So I think that when you combine that case with the, of course, the habeas case, the Stego, Binder v. Stego case. Do you know our history with this instruction? I asked a big question to your friend on the other side. You know, all I can say, Your Honor, and I I know I'm old enough that I should know the history, but I know there was a time before there were pattern instructions, and we primarily used something called a Devin and Blackmar, which was a published book. At some point, the instructions appeared, and there it was. And most folks went to the pattern instruction. But as to how that got selected, I really can't say. The standard is abuse of discretion, and when you decide anything under abuse of discretion, I think you're starting with a presumption that there might be more than one right answer. That might be right, but you're also starting with a presumptive instruction. I mean, the whole point of a pattern instruction is this is the presumptive instruction that should be given. And so to deviate from that is, you know, sometimes considered a significant step. It depends on the case. It depends on the instruction. So shouldn't we have a higher level of scrutiny if there's a deviation from the instruction? There has to be good reason to do so. Well, I think, well, I think certainly those who disagree with the one sentence, and the one sentence talks about applying it to the most important issues in your own lives, those who can't stomach that, whether it's Judge Ginsburg in her concurrence or Judge Cleland, argue that it dilutes the standard. And ultimately, it's his trial, and he doesn't want to have juries instructed on something that he personally believes dilutes the standards, because people make important decisions in their own lives on evidences below beyond a reasonable doubt. I think you can make a pretty good comedy show about someone who tries to go through their life making all their important decisions on a reasonable doubt standard. That person wouldn't decide anything. That person would basically sit in a corner, because whether you want to buy a new house, or move to a new city, or take a new job, we don't normally decide these things under a reasonable doubt standard. And so it isn't a matter of defining reasonable doubt. It's well under both instructions. What the question is, how do we ask them to apply it? We invite them to say, oh, this is just like when you make an important decision. That's not defining it. That's really inviting them to make a comparison that some judges, not the Sixth Circuit jury panel, but some judges think is dangerous. We normally don't ask the jury to put themselves in the position of a party. And we intentionally do not do that. We do not allow attorneys to ask the jury to put yourself in the position of the plaintiff. How would you feel, Mr. Member of the jury? It's improper. It's an improper argument. I think it's an improper jury instruction, too, the jury should be asked to view the evidence reasonably, objectively, and not subjectively. This instruction, wherever it came from, asks them to look at it from a subjective viewpoint, which I think is just totally wrong. And I don't know who the heck came up with this, how long they've had it. But in my view, it's an improper instruction to begin with. And the bottom line is we have to determine whether it's reversible error to give, I think, a better instruction. Well, and the one sentence in the Michigan or with Judge Cleland instruction, which is not in our court standard instruction. I come from Michigan. I'm used to the Michigan standard criminal jury instruction. I've lived with it for years. Actually, Judge Cleland modified it a little bit. I think his modifications are actually an improvement. But the Michigan instruction is a great instruction. And the Michigan committee rejected the Sixth Circuit model instruction when their committee met. And I think for good reason. So maybe, I don't know who's on our model jury committee, but maybe we ought to be looking at this as well here. Go ahead, Mr. Fratt. I didn't mean to interrupt you. No, no, that's fine. What it says and where it tells the jury that this is such a high standard is it says a reasonable doubt is a doubt that's still standing after you carefully and thoroughly examine and discuss all the facts. And so what it tells the jury is that if there are any doubts, they have to be only those speculative and possible ones. If there's any reasonable doubt, one based on reason and common sense, then you're done. You have to acquit. And so to me, that defines it and that conveys to them how high the standard is. The omitted sentence talks about convincing in your own life. Some people could argue that the word convincing even dilutes the standard a little bit because it says so convincing. We have a clear and convincing evidence standard, which is less than beyond a reasonable doubt. So the sentence that was left out, so convincing you'd rely upon it in your own affairs, really doesn't help in the definition. It really just invites them to deal with allergies in their own life. And frankly, it invites lawyers on both sides. I've been there. All the lawyers spend all their time in a lot of time in closing argument, thinking up of important situations that might apply to jurors in their own lives where they can draw an analogy here. I would like to counsel. Sorry, counsel, just to refresh me a few minutes ago, I thought I heard you make a reference to Judge Ginsburg in Kearns. I didn't get the case name right. Is this something from the D.C. Circuit, or what are you referring to? No, a concurrence. I'm sorry. It was the concurrence that it cited in our brief. It criticized the sentence about personal... You're referring to Justice Ginsburg on the Supreme Court. Justice Ginsburg, yes. Yes. What case is that? I'm sorry. Let me pull that out. Victor is the main Supreme Court one I've thought about. I believe it. I believe it was in Victor, Your Honor. All right. I got it now. But the criticism is there both from Judge Cleland and out there, which is that it's a bad path to go down. As far as what happened at sentencing, I want to point out that the comment that was made by Judge Cleland at sentencing was in talking about the nature and circumstances of the offense. He talked about how serious it was, because it's a very logical deduction that if you dump up to 5 million pills in an area like Portsmouth, Ohio, some people are going to die. And that's what he talked about in terms of the nature and seriousness of the offense. He didn't enhance the defendant's sentence. It's a separate sentencing guideline if somebody actually causes someone's death that you can apply. He didn't apply that. So he wasn't saying that I know there are a couple of folks here who died for the defendant. He was using it as a way to say what you've done is very serious here. And that's why the Boston question at the end of the case, which is, do you have any objections that you haven't previously made, is so important. Because if the defense has said, well, Judge, are you really finding, as a matter of fact, that there are some specific individuals we killed, then he could have said what he essentially was saying, which is that, you know, with all the pills you dumped into a community that was devastated, it's very likely some people died. I'm not saying we can identify them, and I'm not enhancing your sentence. So we could have had that discussion had there been an objection. It's a statement of how serious the offense was. And I think that it really doesn't require a remand to have him say what he would have said if there had been a Bostick objection, which was, I'm talking about it would be an incredible stroke of good luck if millions of these dosage units went to Portsmouth, Ohio, and nobody died from them. All right. So because there was no Bostick objection, we review it for plain error? Yes. Okay. And like I say, and then the reason for that is that he could have easily corrected it by saying, I'm not finding, I'm not enhancing your sentence under the guideline for causing death. I'm merely saying that logic and common sense tells us that you're responsible for so many pills there. We know that there were a lot of deaths in that community. We'd be incredibly lucky if your pills hadn't caused some of those. And if he'd said that, which is really what he was saying, I don't think anyone could say that that's not inaccurate. Can I ask you about one other issue? That's the superseding indictment. Yes. Would Ashraq Khan's indictment have been invalid under the local rule that was amended almost immediately after he was indicted or very soon after he was indicted? It would not have been because that local rule said you can't, you basically can't supersede to a case where everybody's pled guilty. But in fact, there was one of those co-conspirators who had not yet pled guilty. So even if the new rule had been in effect, and factually we cite that in our brief, the record entry that shows when Mr. Fred Jackson Sr. actually did plead guilty, it was over a year later after the case was superseded. And so our practice is even under the amended rule, that as long as there's a defendant who's live and hasn't pled guilty yet, you go ahead and supersede a case if you're charging co-conspirators. And we take that so we take that very seriously. And if the suggestion was that I should have not had a superseding case when we were in fact adding people to the same conspiracy and there was a live defendant there, I would have been misleading the court and making an improper representation to the court. You can't go draw a new judge when you've got a pending conspiracy. That's not what the rule allows. And so we had to do it that way. And the suggestion by the appellant that we were breaking the rule and that their brief applies both the wrong rule and the wrong fact. So I don't know that there's much issue there. But again, the court's docket clearly says Fred Jackson Sr. was still pending at the time of superseding. Yeah. Counselor, this is Judge Boggs. Are you hearing me? Yes. Okay. I'm just trying to make sure we're technically okay. Just a quick question. You're sort of implying in a sense that if you didn't follow this rule, it would be a way of judge shopping. Because if you were before a judge you didn't like, you could non-supersede and go to a new indictment which would potentially get you a new judge. That's what would happen. Obviously, we wouldn't want to do that because the clerk of the court tells us you need to answer these questions, fill out this form correctly. And the form really just gives you three options, a superseding, a companion, and a new case not related to any other case. And I can't make that representation that this would have been a new case that needed a new judge. So, I could not have filled out that form any differently. Okay. Thank you for the question. Any further questions, Judge Boggs? Judge Raedler? No. All right. Thank you, Mr. Pratt. Rebuttal, Mr. Wicker? A brief rebuttal, Your Honor, to address Judge Raedler's question. And only to note that, although I'm not sure of the derivation of this particular phrasing of the instruction either, I do want to note that the court has approved it and approved that phrase as well. So, does it make any sense to ask the jury to look at the situation in their own personal life to subjectively look at the evidence? Does that make any sense? I mean, if so, how? I don't interpret it to ask the jury to make a subjective... Well, it asks them how it would affect their own lives, whether it would control their... And normally, we really do look at the evidence objectively and not subjectively. You would not hesitate to rely and act upon it in making the most important decisions in your own lives. I mean, how is that proper? Your Honor, we're asking the jury to bring a lot of things to the courtroom. And we have a similar question where we instruct them to use their common sense. Sure. That's different. Common sense is common, not your own personal life. Now, if this would affect vote, guilty or not guilty, depending on your own personal life circumstance, that's not normally what we ask them to do. I understand the point, Your Honor, but there must be some way that we tell the jury that this is important. And we can do that by asking them to look back and compare it to other things that are important. Or we can give them some kind of objective measure. We've never figured out what objective measure is going to be, but there needs to be some description to explain to the jury that this is important, that it is more important than other decisions that they'll be asked to make in other parts of their life. This is not a perfect instruction, but it's one that the have over and over upheld this decision as this instruction is appropriate. And if there are no more questions, then I'll rely on my brief. Any further questions, Judge Boggs? No. All right. Thank you, counsel. Case will be submitted. You may call the next case.